The clerk will call the first case, please. 18-0771 Michael Townsend v. City of Chicago And, counsel, will you please come up and introduce yourselves? Tell us how long you'd like. Robert Langendorf for Appellant. Michael Townsend. Sarah Hornstra for the City of Chicago. Okay, fine. Thank you. May it please the Court, do you want an opening statement? Well, you should, I think, always be aware that we've read the brief, read the record, and we're familiar with the issues. So, do you want to just hone in on your argument? Okay, I'd be glad to. Basically, this is an appeal from the Circuit Court granting a summary judgment, and I'm sure you guys know the summary judgment standard better than I do. It's really a question of fact, basically on one issue, whether or not Mr. Ricky Anderson was under custody or arrest at the time of this. Was it custody or arrest? Okay, let's first, Justice Hyman, Justice Mason, and I have read these briefs, and we all have questions about the actual words that are used. Prisoner, seized, custody. Let's make sure that you're using the words as specifically as possible. Well, I think the Court looked at the Reese case, and the Reese case is distinguishable from the case that we have here. The Reese case was done after a complete trial, where basically in the Reese case, this prisoner, Mr. Lowe, was arrested and put in the backseat of the police car, and they left the keys in the car. Well, when you're in the backseat of a police car, you would admit that it's custody, wouldn't you? I wouldn't dispute that. Okay. What does custody, in your view, mean? Well, in this case, I think custody means when there's an intent by the police officers to hold you until you're not free to leave, give them the Miranda warnings. Well, stop with your first point there. When Officer Higgins testifies, as he did, he grabbed Mr. Anderson in an attempt to prevent him from leaving. How is that not custody? Well, I don't know that that is a correct statement of fact. I think Officer Higgins' testimony is unreliable, incredible, and inconsistent. It's unrebutted. Pardon? There's nothing to contradict it. There's no deposition testimony to contradict it. There's nothing in the record to contradict it. Well, the facts of the situation is Ricky Anderson disappeared. He was served through the Secretary of State. So are you to take the police officer's word at 100%? And if you do, you have to look at the inconsistencies that he has in his testimony, just like you would. Is there a deposition from Mr. Anderson that says that I wasn't grabbed at? Well, the police officer said they didn't grab him. The police officer said he grabbed at Anderson. Is there anything that Mr. Anderson says he and the other officer were the only two people there, and there were other people on the card? Anybody else offer any deposition testimony? There's no trial, obviously. Any deposition testimony that he was not grabbed at by the police officer? The only thing that's there is what Officer Higgins testified to, and that his testimony is inconsistent and incredible. So Justice Mason has asked you correctly. I think if an officer grabs at you, does that mean that you're detained? Does that mean that you're in custody? Does that mean that you're seized? Does that mean that you're a prisoner? I mean, what does that mean you are? I don't know what it means. The term grabbed at is not even defined by Officer Higgins. We don't know what it means. We don't know what it is. And we have Anderson saying, why are you grabbing me, right? That's Officer Higgins' testimony. Why are you grabbing me? And what does the word grab mean? Is there a legal definition? Do you know of any Fourth Amendment case when a police officer puts his or her hands on an individual in an attempt to prevent them from leaving, that that is not custody for purposes of the Fourth Amendment? Well, I don't think that he actually touched them and he didn't grab them. If a police officer says, stop, I'm a police officer, the cases say from that point you're not free to leave. The Fourth Amendment is implicated. Do you know of any case that says otherwise? Well, I think the Markella case and the talks about the intent of the police officer, the police officer never gave his intent of what he was doing. But you think he's lying. You think Officer Higgins is all making this up. That's what you say throughout your brief. Well, Officer Higgins is quoted as saying Charles Johnson, who was a witness to the police car, to Flynn alluding he says you can't trust the citizen, what he's saying. So why does this court trust the police officer? Can we just take these as separate periods of time? There's the initial traffic stop stops the car. Passengers in the car are stopped as much as the driver of the car for a traffic violation. That's clear. So then we have the red Solero traveling at a high speed. And we still don't even know for sure whether there was a chase or whether. Let's slow it down even more. Okay. And then there's a third period of time when the car was red Solero was stopped and there were police officers around the red Solero and Mr. Townsend was injured. So there's three separate periods of time. We're still talking about the first one, whether or not Mr. Anderson was an escaping prisoner. And you're telling us that he wasn't a prisoner because we can't believe Officer Anderson or Officer Higgins, even though that deposition testimony is unrebutted. Is that what you're saying? That he isn't a prisoner because? I don't think it's an undisputed fact. I think it's a fact that should be decided by the trier of fact, the jury, and his testimony shouldn't be taken the way it is unless you're allowed to cross-examine it. Well, let's go back. Did any police officer speak what the record showed? What was said to Anderson by any police officer at the time of the stop? Were there any words exchanged? I don't think there was any words exchanged. So the only, was he told to stop? No. Justice Mason said something about stop. The word stop is in the transcripts. So the only thing we have is a hand movement, supposedly, from the officer says it was an attempt to grab because the car was leaving. Now, we know it was, does the testimony say he was grabbing at Anderson or he was grabbing at the car? It doesn't say anything. So we don't know if he was even grabbing at Anderson. He could be grabbing at the car. Now, would you say that the car was seized? I would say not. No? No. Well, when the police officer stops a car, is that car free to leave until the police officer says otherwise? I mean, if, let's say. A car doesn't drive itself. No. So, but that's the point. But can anybody just say there's a friend having to be standing at the corner after you've been pulled over by a police officer, and the friend gets in the car and drives off? Is that okay? Is that the car can just, somebody can get in the car and drive off, and the police officer's there at a stop? Well, I don't think the police officer was speaking to Mr. Anderson. No, but that's not my question. My question's hypothetical. There's a stranger, to the police, but a friend happens to be right there when you're pulled over. A friend, your police officer's talking to the driver. A friend gets in the car and drives off the car. What do you think would happen? I don't think, if I was driving and I got picked over for a DOI. I'm not talking about you. A third party. I'm just saying a third party came over, and a friend or relative came over, they would be allowed to leave, take the car away. Be allowed. Unless the police said don't do it. Okay, allowed. But that's asking for permission. Well, I don't know that they would need permission to take the car away. The car wasn't under arrest. You don't think the car was seized? No. Actually, one of the difficulties I've had with this record is that the car itself, I don't think that there's anything that indicates the car itself. If there's an officer on either side of the car, there's two officers. So there's not an officer standing in front of the car making it, stopping it from moving, but there are officers on either side of the car. So even if it's a two-door car or a four-door car, it really doesn't make any difference because the officers are standing there and anybody who tried to, for example, escape on foot could be easily prevented by the officer by just stopping the car door from opening or actually physically grabbing the person trying to escape. So first of all, starting with the Supreme Court cases, U.S. Supreme Court cases that say when a car is stopped, the passengers are stopped. And for all intents and purposes, they're all detained until they're let go. And no one has the right to just leave. And part of that is for officer safety. So starting from that, if Anderson was properly detained at the point the car was stopped and he was a passenger in the car, then you have to believe he had no right to leap over the front seat and take away with that car. The car was stopped and the passengers and the driver, they were all stopped. There was a lawful reason to stop it. And so you're telling us that you still don't believe that Anderson was escaping prison and I'm having trouble understanding that logic. Well, first of all, I don't believe the factual situations that was put forth by the police officers because it's totally incredible. It defies physics and logic. They're saying in a small two-door car, this six-foot guy, there's two people in the back seat. They don't even talk about leaving the keys in the car, whether the car was running. In the Reese case, the police officer actually admitted that he left the keys running and violated his own procedure and there was no cage in the back. I'm sorry. And the guy dropped in. I don't mean to interrupt your flow of thought, but how did he move the car if the keys weren't in it and the engine wasn't either running or able to be started? There's no doubt that the car actually moved after the initial stop. We all agree on that. Who knows what happened? He may not even have been in the car. We don't know what happened. I think the officer's testimony is credible, incredible, and the story is fabricated all the way down. If he was going to make it up, counsel, why wouldn't he say, I saw a gun in the back seat? I saw a gun in the back seat. I told him to stop. If he's going to make it up, he could make up a much better story. Okay. Well, that's a good point. I'm glad you brought that up because they did later on say they found a gun in the car and that no one charged anyone with having an unregistered, unlicensed gun, a .45 caliber gun. Right. So my point is, wouldn't he have made up a better story? He made up a lousy story. They made a terrible story up. And whatever they say is incredible. What they said in there, why would someone who has an unregistered gun, why would they not charge that person to let him go? The person who was arrested originally, Fitch, who didn't have a driver's license. Because there are four people in the car, and they can't prove who possessed it. That's why they don't charge. Well, was that explained? You're the one who's raising it. Did the police off? They didn't charge anybody. So if there's a gun in the car, an unregistered gun, the police don't have a right to charge anybody. I don't believe that is the way the world works. And I don't think that the facts that they say are credible, just like Officer Higgins who were reliant says you can't trust the citizen, who described the police chase that was going on in the street, says you can't believe this guy. Why should the court believe a police officer when he's saying an incredible story? Well, whether it was a high-speed chase or not is almost irrelevant to this. The only question is whether or not Mr. Anderson was an escaping prisoner. He could have been escaping slowly, or fast driving. It didn't make any difference. I agree with that. The chase is not the issue. It's all to the point of credibility and whether or not the officer was fast driving. But even if the officer grabbed at something, whether it was a car or Anderson, does that make him a prisoner? The word is prisoner. That's a – and the court looks for – the definition looks at the word custody. Now, in what way – I mean, you agree that there's no custody of Mr. Anderson. So what's the basis for no custody of Mr. Anderson? Well, he didn't read him his Miranda rights. He didn't tell him he was not free to leave. He didn't say anything to him. He didn't even notice him in the car. They were basically outside the car, according to their story, looking at the other people in the car, and they didn't even notice them until they allegedly left – the one guy left the scene. I don't even know what happened to the other guy in the car. Where did – they don't even account for him in the police reports or the testimony. It was the other guy in the back seat who wasn't even – who wasn't even – Just Mr. Ware, right? No, Mr. Ware was driving – Pitch was driving the car, but they don't – Ware was the driver of the second car that the two collided in. So Mr. – there was a – the car was chased, and then the police hit Mr. Ware's car, and Mr. Ware's car hit Mr. Chapman's car. So that was the defendant was Mr. Ware. In the police report, Unit 2 was Mr. Ware. Unit 1 was Ricky Anderson's car, the Solero. Mr. Ware's car was the Lexus ES3 with license plates EX3000 series.  Mr. Williams wasn't accounted for. Yes, he was the one charged with possession of cannabis. And nothing else. Pardon? And nothing else. But he was accounted for. And he had the gun on him. He was the other passenger in the car. And he had the gun on him. The gun was found in the car. It wasn't found on Mr. Williams. Well, it said it was found on him. I'm not sure we're reading the same record, Mr. Langendorf. Okay. I have – Mr. Fitch was the driver, Mr. Walts was the front seat passenger, Ricky Anderson and Corey Williams were the two back seat passengers. So you're saying we don't even know what happened to Mr. Williams, but I think that we do. Okay. He was in the car when it crashed. I stand corrected. Okay. Anything else? Well, I think the cases that the court – the case that the court relied on, Lief's case, was a case after trial. The people admitted they were in the car. They admitted they were in custody. And – Do you think that the two back seat passengers climbed into this car after it crashed into the car that Mr. Townsend was in? How did they get there? How did they get there? I don't know. I don't even know what happened at the scene. I don't believe what the – I don't believe what the police officer said. I think it's incredible that two large men jumped into the front seat of a small two-door sedan and jumped into the car and drove away while they were standing there. I just don't believe that's credible. I'm struggling with the fact that, at the summary judgment phase, it was all uncontradicted. There were no depositions to even pry open the lid of anything that the officer said. Uncontradicted is meaning that this is what the police officer said, but their stories are inconsistent and incredible. They didn't even make the arrest. Somebody else filled out the police report. This is all hearsay. They didn't remember half the things that were going on. So who else did you depose? We deposed a significant number – Higgins or Lewandowski? Pardon? Did you depose Higgins? Yes. Lewandowski? Yes. Who else? A few other police officers, the dispatcher, the other people who wrote the reports, and they had inconsistent stories. Mr. Johnson? We did not. Well, Mr. Johnson wasn't there for the – you deposed Mr. Johnson, who was in his deposition, said he thought that there was a – the police truck was traveling at 45 to 50 miles an hour, but – and he was the driver of a separate car, but he wasn't there for the original starting point of this whole discussion, which is whether or not Mr. Anderson was an escaping prisoner. Mr. Johnson wasn't there, so he can't testify to that. And we've already agreed that whether or not there was a chase is irrelevant. That's not the question here. I understand that. I totally understand that, but the question is – gave any kind of deposition testimony that would contradict what the officer said. The only ones we could find were the two police officers. These other people were not to be found. We served the Ricky Anderson through the Secretary of State, through special order process. We couldn't find them. So there's nothing I can do if I can't find people who are not findable. So I can't take their depositions to do that. What we do is we take the depositions of the police officers and we test their credibility, just like you would in a suppression hearing in a criminal case where a police officer says he had probable cause to arrest somebody. There would be a hearing by the court. There would be a probable cause hearing, and the court would determine whether or not the police officer gave probable cause. In this particular case, his credibility, whether they had probable cause or not, is in doubt whether or not it was dusk or not, and then their credibility is in doubt based upon their incredible testimony and the facts of the story, which defy logic. Anything else? That's it. Questions? Questions? Thank you. Thank you. Lawrence, yeah. Your Honors, may it please the Court. There is no genuine dispute about the facts that are material to this appeal. Ricky Anderson, as we've discussed, was a passenger in a vehicle stopped by police, and the two officers conducting the stop had two other. So are you in custody when a police stops a car and you're a passenger in the car? Are you in custody? We believe so. I mean, the U.S. Supreme Court stated that as a matter of law in United States v. that the people, you know, even passengers in a stopped car. Are in custody? I don't think the Supreme Court said they were in custody. For purposes of the Fourth Amendment, yes, you know, because no reasonable person in that situation would feel free to leave. Wait. This is a passenger in the backseat. The police officer never said a word to Mr. Anderson while they were taking out the driver. The driver is the one that has the car. Right. The car apparently doesn't have lights on and it's dusk. Right. So that's why the police allegedly stopped the car. That's correct. And then the officers. Another officer goes to the other side of the car and takes the passenger in the front seat out, and they're both being arrested. Is that correct? The second, the front seat passenger was being detained for officer safety. He was not arrested. Okay. So detained, is there a difference between detained and in custody? You used the word detained. For purposes of, I mean, most cases that discuss this are in the Fourth Amendment context. This, you know, the, I guess I'll back up and say that the Tort Immunity Act says, you know, injuries inflicted by escaping prisoner. Right. There's immunity for that. The Tort Immunity Act defines prisoner as a person held in custody. The Tort Immunity Act doesn't define the word custody, but the Illinois Supreme Court in Rees said, you know, absent that definition in the Tort Immunity Act, we will look to the phrase as it's commonly used. And the court in Rees made clear that in order for a person to be in custody, a formal arrest or imprisonment is not required. And, of course, in the Rees case, there was, you know, somebody, you know, just put into the back of a police car without handcuffs. But a formal arrest is different than having your freedom controlled or limited. So, again, how is a passenger in a car sitting in a back seat a prisoner? That is, I mean, in Rees, the case is so different because we have an individual sitting in a police car and takes a police car. This is totally different. So here you're saying that anyone who travels in a car that's stopped for not having their nightlights on, that everybody in that car is a prisoner? Is that what the state is saying? I don't want the State of Illinois to be clear that anybody in the State of Illinois who's a passenger in a car is a prisoner. That's what you're saying. Now, prisoner within the Tort Immunity Act has a very broad definition of being in custody. Now, they're not formally imprisoned, but the court in Rees said that, you know, custody, which is what prisoner in the Tort Immunity Act is tied to, is a very broad and lasting term. Yeah, but the reason they did that in that case, the word prisoner does have certain meaning. And they're trying to determine prisoner. You can't just say the word prisoner has no meaning whatsoever. In that case, was he in custody sitting in a police car, okay? That's a lot different than every individual who's a passenger in a car that's stopped in Illinois. And for this court, then, what you're asking is this court to say that if you are in a car and a police stops the car, you're a prisoner, right? Yes. Yes, within the meaning of the Tort Immunity Act. I will say in this case, although I actually don't think you need to go quite that far, because in this case there was more than that. You know, Mr. Anderson was in the back seat of the car, and Officer Higgins, when he noticed him trying to get from the back seat into the front seat of the car, physically attempted to grab him. Anderson obviously recognized him. But we don't know, do we know he tried to grab him or the car? No, Officer Higgins clearly testified that he tried to grab Mr. Anderson. Mr. Anderson said, why are you grabbing me? So there was an effort. So there was no, so that right there we know there had been no communications before. And so an individual would not know they're not free to leave. I mean, why, again, we have to find that this individual is in custody under, how that word is used for the purposes of this statute. That's correct. And to read it broadly, what you're asking us to do, it would seem that there has to be some reasonable suspicion by the police, probable cause to hold somebody. Apparently not. You're saying, are you saying there needs to be no probable cause to hold somebody, and there's still a prisoner under this act? If somebody's held without probable cause, then they would have an action under the Fourth Amendment for false arrest, perhaps under state law for false arrest. So you have to go through that, even though people are supposed to know that. I mean, they can sue the police and false arrest. I mean, they have a cause of action. But, I mean, for purposes of the Tort Immunity Act, which the legislature, you know, chose to define prisoner as a person held in custody, the Supreme Court in Rees stated unequivocally that the legislature, if they had meant something narrower like formal arrest or imprisonment, they would have used those words. It's been over eight years since Rees. That's not the issue. The issue is that he was, the issue is custody. And whether, as you agree, is to be read broadly as anybody sitting in a car that happens to be stopped, because that's all we have. What about seizure? What's the word seizure mean? Is it different than custody? I think effectively they're the same. No, are they the same? Seizure in the Fourth Amendment means the same as custody. Does it mean, why don't you answer that one first? I think custody in terms of if it's, you know, a person's not free to leave, in that sense the seizure and custody are the same. Under United States v. Brennan, the Supreme Court held that there's a seizure of people in, you know, a passenger in a vehicle that's been stopped. Seizure. Even if all it was was a traffic offense and even if the person. But seizure is not the word we're looking for here. But you're saying that seizure and custody are the same thing under the Fourth Amendment? Is that your? I believe so. Are you saying that, yes or no? I'm saying that I may need to, you know, I may need to clarify. You're not sure. Custody, however brief, implicates the Fourth Amendment, right? Correct. Right. Okay. And the Tort Immunity Act defines prisoner as a person in custody. That's correct. And the Supreme Court in Reese said that it's a broad and elastic definition. And, you know, it's been over eight years since Reese was decided. The General Assembly hasn't soft bit to make an amendment to Section 4106, and it is the General Assembly that has the ultimate authority to define the scope. Now, this is where the escaping part comes in, because if you believe that a person who is a passenger in a car that is stopped is seized or in custody, however fleeting, while the officer does whatever he's going to do, a lot of the cases talk about officer safety, but they also talk about trying to escape at that point creates the fact that you have been detained and now you're escaping, that the officer at that point can believe that you are an escaping prisoner because you have no right to leave. And so the logic of it starts with officer safety. The officers have a right to check out everybody who's in a car to make sure they're not going to get killed. And the second thing is, once you decide as a passenger you're going to run, run for it, the officers then have an objective reason to believe that you knew you shouldn't have and that you have now created the situation where you're a prisoner. Correct. I mean, if Mr. Anderson had opened the door and tried to casually walk away, I mean, it's almost certain that the officers would have stopped him at that point. You know, if he would have thought that he was free to leave, you know, that would have been cleared up by that. In this case, he, you know, jumped into the front seat, tried to drive away indicating that from the beginning he didn't think he was free to leave. But if there were any ambiguity on that point when Officer Higgins reached out and tried to grab him, it was clear that he was not. And, you know, the car was under the officer's control. There was no, you know, no one was free to take the car at that point. Is there a difference between the word custody in the Fifth Amendment and the Fourth Amendment? I don't believe so. So your position is that there's no difference between custody in the Fourth Amendment and the Fifth Amendment? I'm not certain. I don't think so. But I don't think that it matters to this case because Illinois, the General Assembly, you know, they can define custody however they want. It doesn't have to be custody. Well, they didn't define it. I mean, that's part of the problem here, right? That's right. So those are the General Assemblies. We have to find out what that word means. Right. And there's a Fifth Amendment and there's a Fourth Amendment. So you're saying it's your position that custody means the same under the Fourth and Fifth Amendment? Did you brief anything about the Fifth Amendment in this case? Wait, wait. She hasn't answered my question. Did anybody brief anything about the Fifth Amendment? No. I mean, there were probably some precedents, you know. The issue of custody comes up in the Fifth Amendment context because of when Miranda warnings were necessary. So I think there's some cases that touch on that. But, you know, the court in Rees drew from a variety of contexts in looking at what custody meant and saying that it was broad. And I will note that the plaintiff has not argued that if, you know, the facts of the case are what the officers testified to, that Section 4106 shouldn't apply here. The distinction that he's drawn between this case and Rees is that there was a trial in Rees, which doesn't make a difference. I mean, the standard there was, you know, the court upheld judgment as a matter of law. Here we have summary judgment. We have the officer's testimony, which I think the discussion earlier during the first part of the argument illustrated is uncontradicted. And the notion that there should be a trial in this case to test the facts, it doesn't make sense because, you know, a plaintiff, a non-moving party, to avoid summary judgment has to come forward with evidence to create a genuine issue of material fact. If it's not possible to get another version of facts, then there's nothing to have a trial on. Let me ask my question again. Under the word custody, under the Fourth and Fifth Amendment are the same for purposes of what you argue. Is that correct? I believe so. I'd be happy to follow. I just ask you what your position is. It's not something that, you know, I thought through in briefing this. I'd be happy to submit, you know, follow-up memoranda on that issue if the court thinks it's relevant. I think that the, you know, the General Assembly said that if the person held in custody, it's up to the courts to sort of determine the parameters of that. The Illinois Supreme Court in Rees didn't, you know, say it has to be a Fourth Amendment. Was Anderson a suspect in anything? Not before he tried to flee. No. Well, flee. I mean, again, nobody told him he couldn't leave. He was a passenger in a car. That's right. And if they were worried about their safety, they would have asked all the passengers to get out, which they didn't do. They didn't do that at the outset. We can't talk about their safety because apparently they weren't worried about their safety, otherwise they would have had all the passengers to get out because they were each on each side of the car, dealing with the individuals in the front seat. There is a continuum, though. I mean, they stop the car, they pull the car over, they curb it. They get out of the car. The police get out of their car. They ask the driver for his driver's license. He doesn't have one. They ask him to get out of the car. Then they ask the passenger to get out of the car. They cuff them both. And all of this is happening in a matter of minutes. This is not a prolonged encounter. Right, right. It may have been a matter of misjudgment, you know, to not send the back seat passengers. So if they're securing the driver and the front seat passenger, one could argue that they just didn't have time to get to the back seat passengers yet because they were busy with the front seat people. That's correct. It did happen very fast. I mean, there's not any deposition testimony that all this took a long time. No, and it's certainly not necessary that Anderson have been under, you know, suspicion or been accused of any wrongdoing before he attempted to flee. You know, that's not a requirement for him being in custody within the meeting. So is it possible that Mr. Anderson was in custody for the fleeting period of time that he was on the back seat of the car and that he became a fleeing prisoner at the moment that he decided to put the car in gear and take off? I think that's a reasonable view. Right. You know, the court doesn't need to go as far as ruling that anybody in the back seat of the car is a prisoner. And the only reason I'm saying that is because if the police had gotten to the point where they said, did the two back seat guys get out of the car, you know, and those two guys get out of the car and they say, okay, we're going to leave, officers, and the officers say fine, then obviously they stop being prisoners at that point. Right. That's right. That's right. They know they're free to leave. Right. Nobody's holding them. But when the officer grabbed at him, that converted this encounter with the police almost instantaneously from something that was simple and benign to something that was more perfected by the officer as an act of detaining this person. Correct. There was no question at that point that he was not free to leave. And he knew he wasn't because he responded, why are you grabbing at me? Well, we don't know that. But in any event, he was not charged as an escapee, was he? No, he was charged with traffic offenses. Right. Well, he wasn't charged, called a prisoner at any later date, was he? No, no. But, again, looking at Reese, where you have somebody in the backseat of a police off car who takes a police car. This is a private citizen, not driving a car, sitting in the back. And the question is, is he or she, is that person in custody? So if we rule in your favor, aren't we saying that anyone in a car in Illinois that's stopped, who has to sit in a car, is in custody as a prisoner or an escape prisoner if they should try to leave? Aren't we saying that? I don't think the court has to go quite that far, given the additional fact here that, you know, when he tried to leave, the officer tried to restrain him. Well, again, it could have been restraining of the car. Because the car is different than the person. Would you agree to that? Yes, but there's... Could they have seized the car and not the person? I think if the car is seized, the people inside it are seized until and unless the officers, until unless, you know, they leave and the officers let them go. And you're saying seized in custody mean the same thing? Yes. That's your position. Okay. Thank you. But, again, I don't, the court doesn't have to go as far as saying everybody, you know, in the back seat of the car is a prisoner. There's the additional fact here. But, again, you know, this is within the meaning of the Tort Immunity Act, which does use custody as the definition of a prisoner. And the court in Reed said that the term is broad and elastic. It is the General Assembly. It doesn't say how broad. And, again, we can differentiate this case, as Kessel argues, from Reed's. Certainly. Yes, certainly we can see that there are distinctions. But the General Assembly has drawn this broad immunity. And, you know, there is a concern that the parameters of it are too broad. You know, that's an issue for the General Assembly. And it's not a matter of saying that everyone in a car that's been stopped is, you know, a prisoner in the sense that they're in prison in Illinois. Well, why not? They are a prisoner within the meaning of the Tort Immunity Act, meaning that if they then flee, you know, there's a different meaning. Within the Tort Immunity Act, but you're taking the definition of custody. So, I mean, you can't have it both ways. Either everybody's in custody, then, and they're prisoners. And you're saying equate prisoner with custody. So I don't understand how you can say, well, sometimes they are and sometimes they're not. The Tort Immunity Act defines prisoner as a person in custody. That obviously doesn't mean. The legislature that has equated the two said prisoner is a person in custody. That's right. That's the definition within the Tort Immunity Act. But I guess what I'm trying to address is the concern that that definition somehow has, that it somehow matters outside application of the Tort Immunity Act. There's not a, you know, I get the sense, Justice Hyman, you might be concerned that saying that someone is a prisoner by virtue of being in the backseat of a car, you know, carries some consequences for that person. It's just a matter of how you apply the Tort Immunity Act. What you're saying is everybody's in custody.  And I'm just trying to figure out the basis for you to say that. Would it have been any different if Mr. Anderson crawled out of the backseat, took that gun that was in the car, shot at the officers, missed the officer, but hit a citizen? Would it have been any different in terms of the analysis? I think then, you know, he wasn't free to leave and he would be. Right. He's trying to run away, shoots at the police, and he hits somebody else. I do want to make just a quick correction to the record, which actually is not material to the issues here. The gun, the officers didn't testify that they saw the gun at the time that they stopped the car. Yes. And it was found just outside the car. Right. But, you know, that's all. I just wanted to make that clear. But Justice Mason's point goes to what we were talking about earlier, officer safety. A lot of these cases drill down on officer safety and what happens when an officer makes a traffic stop and what the logical consequences of that traffic stop can be. And one of those consequences is that all of the passengers are now being lawfully detained during the duration of at least the traffic stop so that the officers can at least check officer safety. And that's one of the reasons we consider the passengers detained. That's correct. And that's exactly what the U.S. Supreme Court said in United States v. Fredman. So the fact that they hadn't gotten to the gun yet is irrelevant to whether or not they had a right to detain all the passengers and, in fact, all the passengers who were detained at that point. That's correct. We have the word detained, seized, and custody. Custody, prisoner, all those. Well, no, let's not use prisoner. It's custody, detained, and seized. Your position is they all mean the same thing. For purposes of the tournament. For purposes of this act, they all mean the same. Yes. Thank you. Anything else? No, I just trust that the factual issues that we've satisfactorily presented, that the lack of a dispute on any factual issues, that we ask you to affirm the judgment of the circuit. Thank you. Thank you. Mr. Langendorf. I think, basically, I think if you looked at here, I talked about the facts and the distinguishing, but if Mr. Anderson was in custody or arrested, he never got charged with that. So I think that leads to the intent. He only got charged with fleeing and looting. He did not get traffic offenses. He did not get charged with resisting arrest or any of that nature. So I think that leads to the conclusion that he wasn't arrested or he wasn't in custody or wasn't seized or whatever terminology. And to give a broad meaning under the act and to allow police officers a pass on everything for customer safety, I don't think that's the intent. That's all I have to say. Thank you. Thank you. Ladies and gentlemen, thank you very much for your excellent briefs and excellent oral argument. This case will be taken under advisement.